Merrimack
No. 7479

### Merchants Mutual Insurance Company

v.

### City of Concord

### Same

v.

### County of Merrimack

June 7, 1977

484

*Hall, Morse, Gallagher & Anderson,* of Concord (*Mr. G. Wells Anderson* orally), for plaintiff, Merchants Mutual Insurance Company.

The city of Concord filed no brief.

The county of Merrimack filed no appearance.

*Upton, Sanders & Smith* and *Robert W. Upton II,* of Concord (*Mr. Upton II* orally), for intervenor, Estelle Nichols, administratrix of the estate of Craig W. J. Nichols.

LAMPRON, J. Petitions for declaratory judgment filed by plaintiff to determine the coverage afforded by its general liability policy GO-22441, issued to the city of Concord, and by its general liability policy GO-18522, issued to the county of Merrimack. Estelle Nichols, administratrix of the estate of Craig W. J. Nichols, filed a motion to intervene which was granted. These actions arise out of the suicide of Craig W. J. Nichols at the Merrimack County jail on or about October 11, 1973, during the term of these two policies. Wrongful death actions were initiated against the city and county by Estelle Nichols, wife of the decedent and administratrix of his estate. The following three questions were reserved and transferred without ruling by *Batchelder,* J.:

> 1. Does General Liability Policy GO-22441 afford full, partial or no coverage to the City of Concord for the alleged negligent acts and resulting suicide of Craig W. J. Nichols complained of in the Writ and Special Declaration brought by the Estate of Craig W. J. Nichols. [Our answer is "No coverage".]
>
> 2. Does General Liability Policy GO-18522 afford full, partial or no coverage to the County of Merrimack for the alleged negligent acts and resulting suicide of Craig W. J. Nichols complained of in the Writ and Special Declaration brought by the Estate of Craig W. J. Nichols. [Our answer is "Yes partially", if the jail is covered under the designation "asylums".]

3. If the answer to either question 1 or 2 is no, does RSA 412:3 require the dismissal of that pending wrongful death action.

[Our answer is "Yes" against the city of Concord; "No conditionally" against the county of Merrimack.]

According to the allegations in the writs in the intervenor's wrongful death actions against the city and county, on or about October 10, 1973, Craig Nichols was detained in the lockup of the Concord Police Station, and was later moved to the Concord District Court for arraignment. Following arraignment he was placed in the Merrimack County jail. The following day, October 11, 1973, Craig Nichols committed acts of violence upon himself which resulted in his death on October 17, 1973.

In her writ against the city, intervenor alleges in substance that while Craig Nichols was in the custody of the Concord Police Department he exhibited such behavior as to put agents of the city on notice that he was mentally deranged, incapable of controlling his actions, and likely to commit acts of violence to himself. In particular, it is alleged that agents of the city witnessed an attempted suicide by Craig Nichols as well as an attempted escape while he was being moved from the police station to the district court. Intervenor alleges a duty on the part of the city's agents (1) to seek medical and psychiatric assistance and counsel for Craig Nichols; (2) to inform the district court judge of Craig Nichols' behavior; (3) to inform the judge that Craig Nichols was emotionally upset and unable to control himself; and (4) to see that he was committed to the care of the New Hampshire State Hospital rather than Merrimack County jail. Intervenor further alleges that the city's agents negligently failed to act with respect to each of these duties, and that Craig Nichols' suicide resulted from such negligence.

In her writ against the county, intervenor alleges in substance that at the time agents of the county took custody of Craig Nichols he exhibited such behavior as to put them on notice that he would commit acts of violence against himself if not provided with immediate medical and psychiatric care and if left without supervision. Intervenor further alleges that agents of the city of Concord also informed the county's agents that Craig Nichols had attempted suicide while in the police station lockup and that he had lost control of his actions. Intervenor alleges a duty on the part of

the county's agents (1) to provide Craig Nichols with immediate medical and psychiatric care and counsel; (2) to provide him with constant supervision while in their custody; and (3) to deliver him to the care and custody of the New Hampshire State Hospital rather than retain custody. Intervenor alleges that the agents of the county negligently failed to act with respect to each of these and that Craig Nichols' suicide resulted from such negligence. In a second count against the county, intervenor again alleges a duty on the part of the county's agents to have provided constant supervision of Craig Nichols, and a breach of that duty resulting in his suicide.

I. *The city.*

There are essentially three issues raised concerning coverage by the city's policy. The first issue is whether the alleged negligence falls within the terms of the professional services exclusion contained in an endorsement to the policy. Excluded from coverage are "Immediate medical and surgical relief to registrants and bodily injury claims due to the rendering of any professional services or the commision [sic] thereof." Plaintiff submits that the word "commission" should actually read "omission." Intervenor advances no arguments either to explain the possible meaning of "commission" in this endorsement or to justify not inserting the term "omission". We hold that the exclusion is meant to cover the rendering of professional services or the omission thereof.

We agree with plaintiff that both the alleged negligence of the city in failing to seek medical and psychiatric assistance for Craig Nichols, and its alleged negligence in failing to commit him to the care of the New Hampshire State Hospital come within this professional services exclusion. Medical and psychiatric care, whether provided at the state hospital, at the city's police station, or elsewhere, clearly constitute professional services. *Multnomah County v. Oregon Auto Ins. Co.*, 256 Ore. 24, 470 P.2d 147 (1970); *Harris v. Firemen's Fund Indem. Co.*, 42 Wash. 2d 655, 257 P.2d 221 (1953); *see* 7A J. Appleman, Insurance Law and Practice § 4505 (1962 and Supps. 1974, 1976). The alleged failure to provide such services being an omission of such services, it comes within the terms of the endorsement. However, the city's alleged negligence in failing to inform the district court judge of Craig Nichols' behavior and in failing to inform the judge that Craig

Nichols was emotionally upset and unable to control himself does not come within this professional services exclusion. *See Hazard v. Aetna Cas. & Sur. Co.,* 253 F. Supp. 845 (D.D.C. 1966). No special skills or training would have been required to make the decision of a need to notify the court of the prisoner's condition. *See Keepes v. Doctors Convalescent Center, Inc.,* 89 Ill. App. 2d 36, 231 N.E.2d 274 (1967); 12 G. Couch, Cyclopedia of Insurance Law § 44:526 (2d ed. 1964 and Supp. 1976).

The second issue is whether the alleged negligence constitutes an "occurrence" as defined in the city's policy. The policy provides that plaintiff will pay on behalf of the city all sums which the city becomes legally obligated to pay as damages because of bodily injury "to which this insurance applies caused by an occurrence." "Occurrence" is defined in the policy as "an accident . . . which results in bodily injury . . . neither expected nor intended from the standpoint of the insured." Plaintiff argues that because suicide is an intentional act, Craig Nichols' death was not an accident and is therefore outside the coverage of the policy. While the suicide may well have been intentional, accident is defined in the policy "from the standpoint of the insured." As the insured in this case is the city, it is irrelevant that Craig Nichols may have acted intentionally in inflicting bodily injury on himself. The question is whether Craig Nichols' injury and death was an unexpected and unintended result of the city's agents' alleged failures to act. *Baltzar v. Williams,* 254 So. 2d 470, 472 (La. App. 1971); *Vappi & Co. v. Aetna Cas. & Sur. Co.,* 348 Mass. 427, 204 N.E.2d 273 (1965); *Mass. Bonding and Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 400 (Tex. 1967); 1 R. Long, Law of Liability Insurance § 1.25, at 1–73 (1976). If, as is alleged, negligence on the part of the city's agents not excluded by the prior so-called malpractice exclusion was a cause of Craig Nichols' suicide, then his bodily injuries and death must be considered an accident from the standpoint of the city, and therefore within the terms of its insurance policy. *Fulton v. Great American Indem. Co.,* 11 Misc. 2d 536, 174 N.Y.S.2d 690, *aff'd* 7 App. Div. 2d 832, 181 N.Y.S.2d 780 (1958), *appeal denied,* 8 App. Div. 2d 583, 183 N.Y.S.2d 1018 (1959); Annot., 7 A.L.R.3d 1262, § 3 (1966).

Plaintiff's third argument with respect to coverage by the city's policy is that because Craig Nichols' acts of violence to him-

self and his death did not occur on city premises, no coverage is provided. The policy issued to the city is a "Manufacturers' and Contractors' Liability Insurance" providing "Coverage for Premises and for Operations in Progress Including Operations of Independent Contractors." The city police station is included in the list of hazards under the category "Premises-Operations." There are seventeen exclusions to which the policy does not apply. The sixteenth of these is an exclusion for bodily injury and property damage "included within the completed operations hazard or the products hazard." On the cover to the policy, "Completed operations hazard" is defined as "bodily injury and property damages arising out of operations . . . but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. Operations shall be deemed completed at the earliest of the following times . . . (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed . . . ."

Intervenor argues that the alleged negligence occurred on covered premises, and that the place of the negligence should determine whether there is coverage. However, by its terms the completed operations hazard exclusion applies when the bodily injury occurs away from the insured's premises. Because Craig Nichols was no longer in the care and custody of the city once he was transferred to the county jail, because all the "operations" of the city or its agents were completed upon his transfer, and because his bodily injuries occurred away from city premises, we hold that Craig Nichols' suicide comes within the exclusion for completed operations hazards. It is therefore irrelevant that the alleged negligence took place on city premises and as a part of the operations which the policy covers. On the record before us, the answer to transferred question No. 1 is "No", the general liability policy issued by the plaintiff provides no coverage to the city of Concord for the alleged negligent acts and resulting suicide of Craig W. J. Nichols complained of in the wrongful death action brought by intervenor. See *Atwood v. Hartford Accident & Indem. Co.*, 116 N.H. 636, 365 A.2d 744 (1976).

II. *The county.*

There are also essentially three issues raised concerning coverage by the county's insurance policy. As with respect to the city's

policy, plaintiff argues that the alleged negligence against the county falls within the terms of the professional services exclusion contained in an endorsement to the policy. This endorsement provides that "the insurance does not apply to bodily injury or property damage due to

1. the rendering of or failure to render
   (a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;
   (b) any service or treatment conducive to health or of a professional nature; . . ."

As with the city, the alleged negligence on the part of the county in failing to provide Craig Nichols with medical and psychiatric care, and its alleged negligence in failing to deliver him to the care and custody of the New Hampshire State Hospital would, if proved, amount to failures to render professional services. Therefore, if Craig Nichols' suicide was due to such failures, the county's insurance policy provides no coverage because of this professional services exclusion.

This exclusion does not apply, however, to the alleged negligence on the part of the county's agents in failing to provide Craig Nichols with constant supervision while he was in their custody. No professional training or skills covered by the exclusion were required for the county's agents to determine that Craig Nichols would commit acts of violence upon himself if left without supervision. Nor were such professional skills or training required to provide him with the supervision which it is alleged should have been provided. Therefore, this duty and the breach thereof alleged by intervenor are not excluded from the county's policy coverage by virtue of the professional services endorsement.

For the same reasons discussed with respect to the city's policy, the fact that Craig Nichols' suicide may have been intentional from his standpoint does not make it intentional from the standpoint of the county, the insured under this policy. If, as is alleged, Craig Nichols' suicide was caused by negligence on the part of the county's agents, his violence to himself and resulting death must be considered an accident within the definition of "occurrence" contained in the county's policy. The policy therefore provides coverage if intervenor proves her allegations.

■ The final argument advanced by plaintiff with respect to the county's policy is that the county jail is not one of the premises covered. Intervenor argues that the "asylums" in Boscawen, New Hampshire, included in the list of "Premises-Operations" hazards, refers to the county jail. Plaintiff provides no alternative explanation for this term. Although we assume the term refers to the jail, we refrain from so holding. Rather, this is a question of fact to be determined in the trial court. 1 G. Couch, Cyclopedia of Insurance Law § 15:3 (2d ed. 1959). Our answer to transferred question No. 2 is therefore "Yes." If the term "asylums" does refer to the county jail, general liability policy GO-18522 provides coverage to the county of Merrimack for the negligence of the county in failing to provide Craig W. J. Nichols with constant supervision and for his resulting suicide, as is complained of in the wrongful death action brought by intervenor. If the term "asylums" does not refer to the county jail, then there is no coverage under this policy.

■ Intervenor concedes that to the extent the insurance policies involved do not provide coverage, transferred question No. 3 must be answered affirmatively. RSA 412:3 (Supp. 1975) provides for a waiver of sovereign immunity to the extent any municipal subdivision, including cities and counties, has acquired insurance against the risk involved when damages result from the performance of governmental functions. The events in question took place prior to July 1, 1975, the effective date of *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974), abolishing sovereign immunity for cities and towns. Except for the provisions of RSA 412:3 (Supp. 1975), the immunity of counties from liability has not been abrogated by judicial decision or otherwise, and intervenor does not argue that we should do so in the context of this case. Our answer to transferred question No. 3 is "Yes", the action against the city of Concord must be dismissed. "No" the action against the county of Merrimack need not be dismissed insofar as it is covered by insurance.

*Remanded.*

All concurred.