IMPERIAL CASUALTY & INDEMNITY
COMPANY, Plaintiff,

v.

The HOME INSURANCE CO. OF MAN-
CHESTER, NEW HAMPSHIRE, et
al., Defendants,

v.

NATIONAL CASUALTY COMPANY,
Additional Defendant.

Civ. A. No. 88-0932.

United States District Court,
M.D. Pennsylvania.

Jan. 8, 1990.

Francis E. Marshall, Jr., Law Offices of
Francis E. Marshall, Jr., Harrisburg, Pa.,
for Imperial Cas. and Indem. Co., plaintiff.

Zygmunt Ronald Bialkowski, Jr., Scran-
ton, Pa., for Home Ins. Co. of Manchester,
N.H., defendant.

Michael John Foley, Scranton, Pa., for
Cynthia Parker, Administratrix of the Es-
tate of Elvin R. Parker, defendant.

Donald B. Hoyt, York, Pa., for County of
York Pennsylvania, Mary Ellen Filipovitz,
Raymond W. Neidinger and York County
Prison Bd., defendants.

Frank J. Lavery, Jr., Marshall, Denne-
hey, Warner, Coleman & Goggin, Harris-
burg, Pa., for Nat. Cas. Ins. Co., third-par-
ty defendant.

## MEMORANDUM

CALDWELL, District Judge.

Plaintiff, Imperial Casualty & Indemnity
Company (Imperial), and defendant, The
Home Insurance Company of Manchester,
New Hampshire (Home), have cross-moved
for summary judgment pursuant to Fed.R.
Civ.P. 56.[1] This is a declaratory judgment
action in which Imperial seeks to hold
Home liable for the attorney's fees and
costs Imperial incurred in defending anoth-
er action before this court, *Parker v.
County of York*, No. 87-0466 (M.D.Pa.),
along with Imperial's contribution to the
settlement of that action.

---

1. Third-party defendant, National Casualty
Company, also moved for summary judgment.

That motion was unopposed and was granted by
order, dated December 15, 1989.

Imperial had issued a policy of insurance to the County and its Sheriff's Department for "damages because of wrongful acts arising out of Law Enforcement activities. . . ." Home's policy is a comprehensive general liability policy issued to the County of York. Imperial defended the County and one of its employees (Raymond W. Neidinger) in the *Parker* action pursuant to a reservation of rights. Home declined coverage for several reasons but its defense of this declaratory judgment action is based upon only two of its grounds for doing so, two exclusions in its policy.[2] One exclusion, dealing with "Malpractice and Professional Services," provides that there shall be no coverage for "bodily injury or property damage due to the rendering of or failure to render any professional service." The other exclusion, dealing with "Law Enforcement," states that the policy would not apply "to any loss or claim arising out of the law enforcement activities or operations." The Home policy provides no clarifying definitions for these exclusions.

By way of background on the *Parker* case, it was brought because of the death by heart attack on May 31, 1985, of Elvin R. Parker, then an inmate at the York County Prison. According to the amended complaint, which we must examine to determine the defendant's duty to defend, *see Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (3d Cir.1985), Parker was brought to the prison infirmary at about 10:00 p.m. that night suffering from symptoms of a heart attack. The nurse on duty at the time, Mary Ellen Filipovitz, R.N., and Neidinger, a prison guard, were alleged to have acted wantonly, recklessly, and intentionally in failing to provide the decedent with necessary medical treatment. The complaint also apparently alleged that other, unnamed, prison employees failed to provide the decedent with prescribed medication needed for his heart condition in the days prior to the attack and failed to obtain medical treatment for him when he first began to complain of his heart condition.

A cause of action under 42 U.S.C. § 1983 and pendent state law claims were asserted.

■ We will analyze the law enforcement exclusion first. Plaintiff contends that the plain meaning of the phrase "law enforcement" does not include activities dealing with the incarceration or detention of prisoners or others awaiting trial.[3] Rather, they involve only conduct occurring prior to that time, such as investigations and arrests. In support, plaintiff refers us to the following definitions of "law enforcement officer."

> Those whose duty it is to preserve the peace. [cited case omitted]. See also Police officer; sheriff.

Black's Law Dictionary 796 (5th ed. 1979) (brackets added).

> A policeman, sheriff, deputy sheriff, constable, or other officer whose duty it is to be vigilant in discovering violations of the criminal laws and ordinances and to arrest offenders.

Ballentine's Law Dictionary 712 (3d ed. 1969).

The further reference in the Black's Law Dictionary definition to "police officer" and "sheriff" are in accord with the Ballentine's Law Dictionary definition in limiting a "law enforcement officer" to a person who apprehends and aids in the prosecution of criminals. In the absence of a policy definition, we believe we should rely upon these common definitions in construing the phrase "law enforcement activities or operations" in defendant's policy. Hence, the law enforcement exclusion does not apply to the underlying action since it arose while the decedent was incarcerated in the County prison.

In reaching this conclusion, we reject defendant's reliance upon *Home Indemnity Co. v. Johnson County Fiscal Court*, 682 F.Supp. 326 (E.D.Ky.1987). The policy language at issue in that case is, in our view, distinguishable from the Home policy language in the instant case. In *Johnson*

---

**2.** Home raised other defenses but did not brief them. We consider them waived.

**3.** The decedent was in the York County Prison serving time on a parole violation and also awaiting trial on another charge.

*County,* the policy excluded "liability ... arising out of the performance of the insured's duties to provide law enforcement ... and all operations necessary and incidental thereto." *Id.* at 327. The district court concluded that this exclusion barred coverage for the underlying action, a claim arising from the murder of two people by an escapee from the County prison. The court reasoned, in part, as follows:

> There can be no valid argument that the operation of a jail, for the purpose of incarceration of convicted criminals or detention of accused, pending disposition of charges against them, is a component of and incidental to law enforcement.

*Id.* at 329.

In the instant case, on the other hand, the exclusionary language stops at law enforcement activities or operations. It does not further preclude coverage for incidental operations.

■ We turn now to the professional services exclusion. We have no doubt that, if the allegations of the *Parker* complaint had related solely to the conduct of Nurse Filipovitz and prison guard Neidinger, this exclusion would have barred coverage. The claims against them were based upon their failure to provide adequate medical treatment on the night of the decedent's death. Medical treatment is a professional service and hence not covered by virtue of the exclusion. *See Harad v. Aetna Casualty And Surety Co.,* 839 F.2d 979, 984 (3d Cir.1988) (quoted and cited cases omitted) ("A 'professional' act or service is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual."). The *Parker* complaint, however, further alleged that the decedent had been prescribed medication prior to his incarceration (amended complaint, ¶ 10), and that prior to and during his incarceration, he had a history of chest pain, angina and breathing difficulty. (¶ 8). Decedent had advised prison officials of his condition (¶ 12) but they withheld his medications, (*Id.*), and medical treatment during the

weeks preceding his death. (¶ 13). The failure of the officials to act was averred to have resulted from a policy of the County of York. (*Id.*).

We do not believe these averments come within an exclusion for a claim resulting from the rendering or failure to render professional services. In one sense, we readily admit they do. Looking to the acts themselves rather than to the status of the actor or title that person may have had, *see Harad, supra,* the prison officials could have been called upon to make a professional, medical judgment when decedent made his requests for treatment or his medications. And in failing to act the officials could have been making a professional evaluation of the nature of decedent's complaints. If so, then the exclusion would apply. *See Merchants Mutual Insurance Co. v. City of Concord,* 117 N.H. 482, 374 A.2d 945 (1977) (actions of city and county officials in failing to obtain psychiatric treatment for prisoner showing signs of mental illness came within exclusion of liability for professional services and were not covered by the insurance policies at issue); *Gulf Insurance Co. v. Gold Cross Ambulance Service Co.,* 327 F.Supp. 149, 152 (W.D.Okla.1971) (" 'Medical treatment' in the form of home remedies, or the giving of a hypodermic injection, without consultation with or attendance by a physician, may be administered by a parent, a non-professional, to his sick child. If so, it would be work or service 'of a professional nature.' ").

But the allegations could also be read as a failure on the part of the prison officials, when faced with serious medical complaints from a prisoner, to convey this information to appropriate prison medical authorities along with the request for medical treatment. In this sense, the officials were not being called upon to exercise a professional judgment but, rather, merely to transmit information and process a request to see a doctor. If so, we do not believe the professional services exclusion would apply. Additionally, the prison officials were averred to have failed to give decedent medication prescribed for his condition prior to his

incarceration. Again, this type of service would not be professional in nature. *See Merchants Mutual, supra* (failure of city employees to convey information to the court arraigning the decedent of his prior behavior while being detained in city jail and that he was emotionally upset and unable to control himself were not actions of a professional nature and were covered under the policy); *Gold Cross Ambulance Service, supra* (failure of ambulance crew to transport decedent to a hospital was not a professional service and excluded from coverage).

Accordingly, we conclude that defendant had a duty to defend the *Parker* action. Additionally, because that action was settled and liability under the various theories and claims was never resolved, defendant also has the duty to indemnify as well. *See Pacific Indemnity Co., supra; Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213 (3d Cir.1989). The defendant has admitted that the amount of the settlement and the costs of defense were reasonable so an order requiring reimbursement of those sums should be a sufficient remedy.[4]

We will issue an appropriate order.

### ORDER

AND NOW, this 8th day of January, 1990, upon consideration of the cross-motions for summary judgment, it is ordered and declared that:

1. Plaintiff's motion is granted and defendant's motion is denied.

2. Defendant, The Home Insurance Co. of Manchester, New Hampshire, by its policy, No. 8896840, provided insurance to the County of York for the defense of the underlying action, *Parker v. County of York* No. 87–0446 (M.D.Pa.).

3. Imperial Casualty And Indemnity Company be reimbursed by defendant for any expenses incurred in defending the underlying action, including attorney's fees and costs and the amount it

contributed to the settlement of that action.

4. The Clerk of Court shall close this file.

---

**4.** Our interpretation of the law enforcement exclusion requires us to conclude that plaintiff had no duty to defend or indemnify. Plaintiff has also requested the attorney's fees and costs in prosecuting this action. We believe that defendant's position on the coverage issue was reasonable and maintained in good faith. Hence, we will deny this request. *See Pacific Indemnity, supra.*