**CLARENDON NATIONAL INSURANCE COMPANY,**

v.

**CITY OF YORK, Appellant.**

**No. 03–4680.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 14, 2005.

Decided Feb. 8, 2005.

Jay B. Harris, Fineman, Krekstein & Harris, Philadelphia, PA, for Appellee.

Donald B. Hoyt, Blakey, Yost, Bupp & Rausch, York, PA, for Appellant.

Before ROTH and CHERTOFF, Circuit Judges, and IRENAS,* Senior District Judge.

## OPINION

CHERTOFF, Circuit Judge.

On July 21, 1969, Lillie Belle Allen, an African American, was shot and killed during a racial riot in the City of York, Pennsylvania. The murder investigation remained dormant until 2000 when a grand jury investigation was initiated that resulted in the indictment of then-mayor of the York Charles Robertson and nine former York police officers. In the end, Robertson was acquitted of all charges, two officers were found guilty of second degree murder, and seven officers plead guilty to lesser charges.

Meanwhile, in 2000, based on applications filed by Robertson, Clarendon National Insurance Company ("Clarendon") issued an insurance policy to York containing claims-made Public Official Liability Coverage and Employment Practices Liability Coverage for the year starting on August 19, 2000. (See Policy Declaration Page.)[1] Upon receiving notice that the Estate of Lillie Belle Allen intended to file a civil suit based on the 1969 killing and information obtained through the 2000 investigation, Clarendon filed this diversity action seeking a declaration that it does not need to defend the City of York in the Allen case because the policy it issued was void ab initio due to material misrepresen-

---

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

1. Although the standard printed policy materials which detail the Public Official Liability Coverage and Employment Practices Liability Coverage obtained also include details about Law Enforcement Liability Coverage offered by Clarendon, the Declaration Page of the York policy makes clear that York did not purchase the Law Enforcement Liability Coverage.

tations made by Robertson and because the claims are excluded from coverage under terms of the policy. The *Allen* civil suit consists of eight counts, four alleging federal civil rights violations, and four alleging state law claims.

The District Court granted summary judgment in favor of Clarendon, finding that the *Allen* civil claims fell within the policy's "deliberate acts" and "law enforcement" exclusions.[2] This Court exercises plenary review of the District Court's order. *See Fiscus v. Wal–Mart Stores, Inc.,* 385 F.3d 378, 381 (3d Cir.2004). We will affirm.

### A.

Under Pennsylvania law, "[a]n insurer's duty to defend an insured in litigation . . . arises whenever an underlying complaint may 'potentially' come within the insurance coverage," even if there is only a "single claim in a multiclaim lawsuit [that] is potentially covered." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987); *Erie Ins. Exch. v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 355 (1996)). In determining whether the duty arises in a particular case, the Court "must read the policy as a whole and construe it according to its plain meaning," and must take as true the factual allegations of the underlying complaint and liberally construe them in favor of the insured. *Frog, Switch,* 193 F.3d at 746 (citing cases). While ambiguities in the policy must also be construed in favor of the insured, "[t]he language of a policy may not be tortured . . . to create ambiguities where none exist." *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 761 (3d Cir. 1985). If the policy's exclusions "are clearly worded and conspicuously displayed," they must be given effect "irrespective of whether the insured read the limitations or understood their import." *Id.* (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 567 (1983)).

### B.

■ As the District Court correctly determined, the federal claims in Counts I through IV of the *Allen* complaint fall within the deliberate acts exception to the policy which excludes from coverage "any 'claim' made against the insured . . . [a]rising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured," (Policy at 14), because they allege that York and five of its officers "knowingly and intentionally" violated or conspired to violate the plaintiffs' constitutional rights contrary to 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. York essentially concedes this point.

■ Nevertheless, York argues that the duty to defend remains because of the state law claims. Clarendon responds that the remaining claims fall within the law enforcement exception to the public officials liability coverage which excludes from coverage "any 'claim' made against the insured . . . [a]rising out of operational law enforcement functions and activities . . ." (Policy at 15.) This exclusion ensures that only those who have purchased law enforcement liability coverage from Clarendon receive such coverage. Here, it is undisputed that York did not purchase the law enforcement liability coverage.

---

**2.** The District Court did not rule on the argument that misrepresentations in the application rendered the policy void *ab initio,* and neither party raised this point on appeal.

We agree with the District Court that the claims in the *Allen* complaint fall within the law enforcement exception. The *Allen* plaintiffs have alleged that each of the five individual defendants was "employed as a police officer by the City of York and was acting in furtherance of his official duties as a police officer" during the events surrounding the 1969 shooting. (Compl. ¶¶ 9–13.) Allegedly, the shooting was the culmination of a long-followed police practice of "systematic[ ] discrimination against African–Americans" which was sparked when a white officer was shot on July 18, 1969. (Compl.¶¶ 17, 23.) Infuriated, the officers encouraged white gangs to take revenge, knew they planned to avenge the shooting by killing African Americans who traveled on Newberry Street on July 21, 1969, and directed the Allen car past a barricade at the end of Newberry Street that day so that it was met with a "hail of gunfire" as "hundreds of bullets rang out from rooftops, from behind parked cars, from porches and other vantage points." (Compl.¶¶ 23, 43, 46, 53–57.) The officer defendants then watched as white gang members cheered that they "got one;" they "took no action to secure the crime scene ... [n]or did they arrest anyone, interview anyone or confiscate any weapons." (Compl. ¶ 60.)

York asserts that the claims are not covered by the law enforcement exclusion because the officers' failure to secure the crime scene and investigate the murder was "contrary to the established policy, practice and custom of the York Police Department," so could not have been in accordance with their "law enforcement function." (Appellant Br. at 9–10 (citing Compl. ¶ 61.)) Also, according to York, because a "law enforcement officer" has been defined as a "person who apprehends and aids in the prosecution of criminals," (*see Imperial Cas. & Indem. Co. v. The Home Ins. Co. of Manchester, N.H.,* 727 F.Supp. 917, 918 (M.D.Pa.1990)), a claim that an individual did not apprehend or aid in the prosecution of criminals, by definition, cannot be a law enforcement action, (Appellant Br. at 10–11).

Those cases that have considered "arising out of" language in similar exclusions broadly read that language to include impropriety or negligence by law enforcement officers in the course of their duties. *See, e.g. Murdock v. Dinsmoor,* 892 F.2d 7, 8 (1st Cir.1989) (alleged kidnapping and battery by police officers); *Western World Ins. Co. v. Reliance Ins. Co.,* 892 F.Supp. 659, 663, 668 (M.D.Pa.1995) (alleged negligence during police custody resulting in death of inmate); *Pfeifer v. Sentry Ins.,* 745 F.Supp. 1434, 1440 (E.D.Wis.1990) (alleged sexual assault during police automobile stop); *Town of Wallingford v. Hartford Accident and Indem. Co.,* 231 Conn. 301, 649 A.2d 530, 533 (1994) (alleged omission by police led to inmate's hanging while in police custody). Indeed, York's reading would prove too much because in almost any case where a tort suit arises from law enforcement action it can be said that the police are alleged not to have been acting in conformity with their proper law enforcement function.[3]

---

3. While York cites *Imperial Cas. & Indem. Co. v. The Home Ins. Co. of Manchester, N.H.,* 727 F.Supp. 917 (M.D.Pa.1990) in support of its argument, the case does not stand for the proposition that negligent or inappropriate law enforcement falls outside the scope of the law enforcement function exclusion. Instead, the *Imperial Casualty* court was faced with the issue of whether the underlying activity itself—medical care during incarceration—was a "law enforcement" activity. *Id.* at 918–19. The court concluded that it was not, so that the law enforcement exclusion did not apply. *Id.* at 919. Here, on the other hand, the activities which the officers allegedly failed to do, such as prevent the crime, aid

In this case, there is no question that the claims in the *Allen* lawsuit "arise out of" the functioning of York's law enforcement department, regardless of whether that law enforcement function failed on the day of Ms. Allen's murder. Indeed, the gist of the allegations is that police exploited their law enforcement status to abet racial violence and murder. Therefore, the claims fall within the law enforcement exclusion and Clarendon has no duty to defend the City of York in the *Allen* lawsuit. We will affirm the decision of the District Court.

the victim at the scene, investigate the murder, and apprehend and prosecute the perpe-

trators, are undisputedly law enforcement activities.