## Town of Wallingford et al. *v.* Hartford Accident and Indemnity Company et al.
### (14998)

Peters, C. J., and Callahan, Berdon, Katz and Palmer, Js.

Argued September 27—decision released November 8, 1994

*Daniel P. Scapellati,* with whom, on the brief, was *John W. Lemega,* for the appellants (plaintiffs).

*Paul E. Pollock,* with whom, on the brief, was *Andrew S. Turret,* for the appellees (defendants).

BERDON, J. The principal issue in this action for a declaratory judgment is whether a provision in an insur-

ance contract excluding coverage for bodily injury claims arising out of police "activities" excludes coverage for claims based on the alleged negligence of police in operating a town jail.

The plaintiffs in this action are the town of Wallingford and three members of the Wallingford police department.[1] They sought a judgment declaring that either or both of the defendants, the Hartford Accident and Indemnity Company and the Hartford Insurance Group, are obligated to defend and indemnify them against a lawsuit filed by a third party. The trial court, holding that a provision in the insurance contract excluded coverage, granted summary judgment for the defendants. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The relevant facts are undisputed. In 1988, the administrator of the estate of Cristobal Rosado brought an action against the plaintiffs for Rosado's wrongful death. The complaint (Rosado complaint) alleged the following. In December, 1986, Officer Dennis Reynolds arrested Rosado on a charge of shoplifting and took him to the Wallingford police station, where Rosado was placed in a detention cell. Reynolds or other Wallingford police officers knew or had reason to believe that Rosado was emotionally distraught, that he had tested positive for the human immunodeficiency virus (HIV), which causes acquired immunodeficiency syndrome (AIDS), or that he had AIDS, that he used drugs, and that he had requested medical attention. Sometime on the day of his arrest, Rosado hanged himself in his cell. Although the police department had installed a

---

[1] The individual defendants are Police Chief Joseph J. Bevans, Officer Dennis Reynolds and dispatcher Marjorie Biehl.

video monitor that was designed to prevent suicide attempts, the police dispatcher had observed Rosado on the monitor only after Rosado had hanged himself. The dispatcher had asked a police officer to try to revive Rosado, but the officer stopped his efforts after learning that Rosado had claimed to have AIDS.

The Rosado complaint alleged that the plaintiffs were negligent in that the arresting officer had failed to provide Rosado with necessary medical care, the dispatcher had failed to monitor Rosado in his cell, and the police chief (a) had failed to train his officers in how to recognize and treat prisoners who need medical attention or who need attention because of "suicidal tendencies or abnormal personalities," (b) had failed to train his officers about how to provide emergency medical care to prisoners with AIDS and its related diseases, and (c) had failed to provide equipment to allow officers to give medical treatment to prisoners who are suspected of having AIDS or its related diseases.

At the time of the incident in question, the town of Wallingford was covered by a comprehensive general liability insurance policy under which the defendants agreed to defend and indemnify the town against certain claims brought against it. The policy, however, included the following exclusionary clause, entitled "Exclusion of Law Enforcement Activities": "It is agreed that the insurance does not apply to bodily injury or property damage arising out of the activities of police personnel, police departments or other law enforcement agencies or the individual or joint action of a member or members of the police department or other law enforcement agencies in the line of duty or on behalf of or on the orders of the named insured."

The plaintiffs sought to have the defendants defend and indemnify them against the Rosado complaint.[2]

---

[2] After the plaintiffs filed this appeal, they reached a settlement of the underlying lawsuit with the estate of Rosado. The plaintiffs continue to

When the defendants refused on the basis of the exclusionary clause, the plaintiffs brought this action for a declaratory judgment. The trial court, in granting summary judgment for the defendants, held that the language of the exclusionary clause was clear and unambiguous and excluded coverage as a matter of law.

In urging us to reverse the judgment of trial court, the plaintiffs contend that we must focus on the words "enforcement" and "activities" in the exclusionary clause, maintaining that those words can reasonably be interpreted to exclude coverage only for those claims arising out of "law enforcement activities." They argue that such an exclusion has two effects. First, it excludes coverage only for claims based on actions of police officers who are enforcing the law—that is, apprehending and arresting criminals. Second, it excludes coverage for claims based only on police action, rather than police inaction. Therefore, because the Rosado complaint was based on events that occurred in the town jail after Rosado had been arrested, and because the complaint asserts negligent inaction of the police—that is, the police officers' failure to monitor Rosado in his cell, to heed his medical needs, or to train and equip officers for medical care of prisoners with the AIDS virus—the plaintiffs argue that the exclusion has no effect. We decline to accept such a tortured construction of an otherwise clear and unambiguous insurance exclusion.

We begin our analysis by noting that it is the function of the court to construe the provisions of the contract of insurance. *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract

pursue this appeal, however, in order to recover the amount of the settlement plus the expenses they incurred in defending against the Rosado complaint. See *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 114–15, 230 A.2d 21 (1967).

and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. . . ." (Citations omitted; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 583, 573 A.2d 699 (1990).[3]

The plain language of the exclusionary clause makes clear that its effect is limited neither to "law enforcement activities" nor to police action, as opposed to police inaction. Despite the plaintiffs' repeated use of the phrase "law enforcement activities" in their brief, that phrase appears nowhere in the operative language of the exclusion.[4] The exclusion clearly refers to "the

---

[3] Although in the absence of "definitive contract language" the determination of what the parties intended is a question of fact; *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987); neither party in this case claims that this matter is not a question of law based upon the language of the provision. See *Hatchco Corp.* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985).

[4] It is true that the exclusion is entitled "law enforcement activities." It is well established, however, that a heading above an insurance provision is not a grant of coverage. *Vadheim* v. *Continental Ins. Co.*, 107 Wash. 2d 836, 841, 734 P.2d 17 (1987). An insured is not entitled to read only the heading and ignore the operative language of the provision itself; indeed, the brevity of the heading indicates that the insured should read further to learn the actual coverage specifications. Id., 842; see 13 J. & J. Appleman, Insurance Law and Practice (1976) § 7387, p. 169 ("[t]he captions will not, of themselves, be taken to override the intention of the parties as shown by the provisions and clauses inserted therein").

activities of police personnel, police departments or other law enforcement agencies . . . ." Therefore, "law enforcement" does not modify the types of activities that are excluded from coverage; rather, the plain language makes clear that *all* activities by police personnel are excluded from coverage, as well as *all* activities of police departments and *all* activities of nonpolice law enforcement agencies in the town.

The only case the plaintiffs cite in support of their position is *Imperial Casualty & Indemnity Co.* v. *Home Ins. Co.*, 727 F. Sup. 917 (M.D. Pa.), aff'd, 909 F.2d 1476 (3d Cir. 1990), in which the court held that a "law enforcement" exclusion did not bar coverage for a claim alleging negligent medical treatment while the decedent was confined in the county jail. The plaintiffs' reliance on that case is, however, misplaced. In *Imperial Casualty & Indemnity Co.*, unlike here, the applicable exclusion was limited on its face to "any loss or claim arising out of the *law enforcement activities or operations*" of the police. (Emphasis added.) Id., 918. As shown above, the language of the exclusion in this case has much broader effect and precludes coverage for claims arising out of *any* activities of the police, whether or not related to "law enforcement."[5] See *Murdock* v. *Dinsmoor*, 892 F.2d 7, 8 (1st Cir. 1989)

---

[5] Indeed, the court in *Imperial Casualty & Indemnity Co.* v. *Home Ins. Co.*, supra, 727 F. Sup. 917, recognized that the result might have been different had the wording of the exclusion been more expansive. For example, the court distinguished its holding from that in *Home Indemnity Co.* v. *Johnson County Fiscal Court*, 682 F. Sup. 326, 327 (E.D. Ky. 1987). In *Johnson County Fiscal Court*, the clause excluded coverage for claims "arising out of the performance of the insured's duties to provide law enforcement . . . and all operations necessary and incidental thereto." Id. The court in *Johnson County Fiscal Court* held that the clause effectively excluded coverage for a claim arising out of the escape of an inmate from the county jail, concluding that the operation of a jail "is a component of and incidental to law enforcement." Id., 329.

The *Imperial Casualty & Indemnity Co.* court emphasized that the *Johnson County Fiscal Court* holding was "distinguishable" because "[i]n the instant

(clause excluding coverage for injuries "arising out of . . . the activities and operations of" the police "covered not only police operations per se, but also anything incident to or having connection with such operations"). Therefore, the mere fact that the allegations of the Rosado complaint revolved around events occurring within a jail, rather than during an arrest or apprehension, is of no significance. Police activities in both settings are excluded from coverage under the plain language of the contract. See *Siat* v. *Fauria*, 494 So. 2d 1224, 1226 (La. App.), cert. denied, 497 So. 2d 1012 (La. 1986), recons. denied, 500 So. 2d 416 (La. 1987) (exclusion for claims "arising from activities of . . . policemen" unambiguously excludes "any activity of a policeman").

Furthermore, there is nothing in the language of the exclusion or in our law to support the plaintiffs' claim that the word "activities" should be interpreted to mean "action" but not "inaction."[6] The plaintiffs ignore the fact that "in many situations the distinction between the two is altogether without significance in the law. Often the same conduct could be described as either one or the other." 3 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 18.6, pp. 712–13. The plain-

case, on the other hand, the exclusionary language stops at law enforcement activities or operations. It does not further preclude coverage for incidental operations." *Imperial Casualty & Indemnity Co.* v. *Home Ins. Co.*, supra, 727 F. Sup. 918–19.

[6] The plaintiffs base their argument largely on their interpretation and use of definitions found in Webster's Third New International Dictionary. They cite the definition of "activity" as being "the quality or state of being active." In turn, they cite the definition of "active" as being "characterized by action rather than by contemplation or speculation." In doing so, the plaintiffs ignore another definition of "activity" that seems more applicable within the context of this insurance contract. The more appropriate definition of "activity" in Webster's is the "natural or normal function or operation." When this definition is applied, the allegations of the Rosado complaint would clearly be excluded from coverage under the contract of insurance.

tiffs, for example, point to the Rosado complaint as alleging a failure to observe Rosado in his cell, a failure to heed his medical needs, and a failure to train and equip the police properly. Yet these same "inactions" can easily be characterized as affirmative "actions"—observing Rosado improperly, treating his medical needs improperly, and training and equipping the officers improperly. The plaintiffs concede that if these had been the allegations of the Rosado complaint, the exclusion would work to bar coverage for the claim.

Moreover, the plaintiffs have not cited a single case to support their argument that the word "activities" in an exclusion clause is ineffective to bar coverage of claims alleging a negligent failure to act. On the other hand, two cases have interpreted the word "activities" as excluding coverage for such allegations. See *Imperial Casualty & Indemnity Co.* v. *Home Ins. Co.*, supra, 727 F. Sup. 918 (failure to provide medication or treatment); *Siat* v. *Fauria*, supra, 494 So. 2d 1225 (failure to test, inspect or otherwise detect the defectiveness of a revolver). We believe these cases correctly construe the word "activities" to encompass claims based upon both action and inaction.

The judgment is affirmed.

In this opinion the other justices concurred.