**WESTERN WORLD INSURANCE COMPANY, Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

**No. 4:CV–94–446.**

United States District Court, M.D. Pennsylvania.

July 13, 1995.

Edward A. Monsky, Fine, Wyatt & Carey, Scranton, PA, for plaintiff.

H. Joseph Byron, and Eric A. Weiss, Marshall, Dennehy, Warner, Coleman & Goggin, Philadelphia, PA, for defendant.

### *MEMORANDUM*

McCLURE, District Judge.

**BACKGROUND:**

This declaratory judgment action[1] was filed by plaintiff Western World Insurance Company (Western World) against defendant Reliance Insurance Company (Reliance)[2] to determine which of them is the primary insurer for claims asserted in a civil rights action[3] filed against the City of Wilkes–Barre, Pennsylvania (the city), city officials,

the Wilkes–Barre Police Department (police department), and Wilkes–Barre police officers for the death of James P. O'Boyle. O'Boyle died on September 15, 1991 after being taken into police custody by Wilkes–Barre police officers. O'Boyle's mother filed an action before this court, *O'Boyle v. Jensen*, 150 F.R.D. 519 (M.D.Pa.1993) for the death of her son alleging civil rights and pendent state claims.

Insurance carriers for the city and the police department cannot agree upon which has the primary obligation to defend and pay the claims asserted in *O'Boyle*. The Wilkes–Barre Police Department is the named insured on a Law Enforcement Officers Liability Policy of Insurance (Policy No. LEL17440) issued by Western World,[4] effective from October 17, 1990 to October 17, 1991. Policy limits are $500,000.00 per occurrence and $500,000.00 in the aggregate.

The city is the named insured on a Commercial General Liability Policy (Policy No. JK–2039062) issued by Reliance,[5] effective from October 1, 1990 to October 1, 1991. Policy limits are $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate.

The *O'Boyle* action was settled with contributions from both insurers paid under a reservation of rights to determine coverage. Each insurer paid 50% of the total settlement ($375,000.00 per carrier), and each agreed that Reliance would pay 50% of all defense costs incurred by Western World in connection with the *O'Boyle* action, minus a credit of 50% of the defense costs incurred by Reliance in defending the *O'Boyle* action. Reliance paid Western World $58,102.09 as reimbursement for 50% of its defense costs pursuant to the parties' agreement. (See: record document no. 10 and exhibit).

Both insurers seek a ruling from this court deciding the issue of coverage. Western

---

1. 28 U.S.C. § 2201.

2. This action was originally filed in the Court of Common Pleas of Luzerne County, Pennsylvania on February 24, 1994 and removed to this court on April 18, 1994 on the basis of diversity jurisdiction.

3. 42 U.S.C. § 1983.

4. A copy of the policy issued by Western World is attached to plaintiff's complaint (record document no. 2) as exhibit "A".

5. A copy of the policy issued by Reliance is attached to plaintiff's complaint (record document no. 2) as exhibit "B".

World filed this action asserting: 1) a claim for indemnity for its portion of the settlement ($375,000.00) and for reimbursement of all costs incurred in defending *O'Boyle* ($116,204.19) or a total of $486,204.19 (Count I); 2) a contribution claim for $486,204.19 (Count II); and 3) a request for a declaratory judgment that Reliance is the primary insurer obligated to provide a defense and/or indemnification in the underlying action (Count III).

Western World has moved for judgment on the pleadings or, in the alternative, for summary judgment in its favor (record document no. 10). For the reasons which follow, we will enter an order 1) denying Western World's motion; and 2) entering final judgment in favor of Reliance.

## DISCUSSION:

### *Summary judgment standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2554.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3rd Cir.1988).

Although the plaintiff is the moving party here and no cross-motion was filed by the defendant, grant of summary judgment in favor of the non-movant is permissible if the court finds that no genuine issue of material fact remains. *Federal Deposit Insurance Corp. v. Sumner Financial Corporation,* 376 F.Supp. 772, 776 (M.D.Fla.1974). The filing of a motion for summary judgment opens the door to entry of judgment in favor of a nonmoving party.

> The practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate. It is in keeping with the objective of Rule 56 to expedite the disposition of cases and, somewhat more remotely, with the mandate of Rule 54(c) requiring the court to grant relief to which a party is entitled 'even if the party has not demanded such relief in his pleadings.'

10A Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2720 (West 1983).

Further, if the defendant were to file a cross motion, it is clear that it would be granted. Requiring defendant to go through the mechanics of filing such a motion would be pointless. We will, therefore, enter judgment in favor of the defendant *sua sponte.*

### Pennsylvania insurance law

■ The coverage issues raised in this action are governed by Pennsylvania insurance law.[6] The presumptions which apply depend upon whether we find the policy language at issue to be ambiguous or unambiguous. In deciding that question, we read the policy with an eye toward avoiding ambiguities and take care not to torture policy language to create uncertainties where none in fact exist. *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3d Cir.1982) (applying Pennsylvania law).

■ Policy language is ambiguous if reasonable persons could honestly differ as to its meaning, i.e. if it is susceptible of more than one meaning. Ambiguities are resolved in favor of the insured and in a manner consistent with his or her reasonable expectations when contracting for coverage. This precludes insurers from enforcing "overly-subtle or technical interpretations" in an unfair attempt to defeat the reasonable expectations of the insured. *Standard Venetian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 469 A.2d 563, 566 (1983) and *Harford Mutual Insurance Co. v. Moorhead,* 396 Pa.Super. 234, 578 A.2d 492, 495 (1990). This rule favoring the insured applies even if the insured is a commercial, business, or governmental entity and therefore, presumably knowledgeable about contracts and their legal implications. *ACandS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 973 (3d Cir.1985).

■ On the other hand, if policy language is found to be unambiguous, these presumptions do not come into play. *Imperial Casualty & Indemnity Co. v. High Concrete Structures, Inc.,* 858 F.2d 128 (3d Cir. 1988) (applying Pennsylvania law). The law gives effect to the plain language of the policy as written. *Harford, supra,* 578 A.2d at 495 and is in keeping with that principle, that plainly-worded coverage exclusions are

given effect so long as they are conspicuously displayed. There is no concomitant requirement that the insured have read or understood such exclusions. *Pacific Indemnity v. Linn,* 766 F.2d 754, 761 (3d Cir.1985) and *Berne v. Aetna Insurance Co.,* 604 F.Supp. 958, 960–61 (D.V.I.1985). Policy language which is otherwise clear is not rendered ambiguous because it requires the insured to read thoroughly and carefully to grasp the coverage received. *Viger v. Commercial Insurance Company of Newark, New Jersey,* 707 F.2d 769, 774 (3d Cir.1983).

■ Linked to policy interpretation on the question of coverage is the derivative question of the duty to defend and indemnify the insured. The insurer is obligated to defend an action filed against its insured if the allegations may potentially come within policy coverage unless and until the insurer can confine the claim to a recovery outside the bounds of coverage. *Imperial Casualty, supra,* 858 F.2d at 131–32; *Harford, supra,* 578 A.2d at 494. Any doubts regarding the insurer's duty to defend must be resolved in favor of the insured. *American Contract Bridge League v. Nationwide Mutual Fire Insurance,* 752 F.2d 71, 76 (3d Cir.1985) and *D'Auria v. Zurich Insurance Company,* 352 Pa.Super. 231, 507 A.2d 857 (1986). Analysis of the duty to defend begins with the allegations of the complaint in the underlying action. The underlying plaintiff's allegations determine, in the first instance, whether a duty to defend exists.

### Allegations in the underlying action

■ James P. O'Boyle was arrested and taken into police custody on September 14, 1991 for public drunkenness, 18 Pa.Cons. Stat.Ann. § 5505. Prior to his arrest, he was transported by police to Mercy Hospital in Wilkes–Barre where he was examined by the emergency room physician on duty. The only injury noted during the examination was a hematoma over O'Boyle's right eye. Tests

---

**6.** Choice-of-law decisions are governed by the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this instance, Pennsylvania choice-of-law rules require application of Pennsylvania law. All of the events took place in Pennsylvania. Both policies

were issued here and all events related to the underlying action took place here. No other state has any contact with the events giving rise to either this action or the state court action. *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964).

were ordered as a precautionary measure. O'Boyle, however, refused to cooperate and became belligerent.

Emergency room personnel summoned the police, and O'Boyle was arrested on a charge of public drunkenness. He was taken into police custody and transported to the Wilkes–Barre police station where he was placed in a holding cell. According to police, O'Boyle was found unconscious in his cell a few hours later at approximately 1:20 A.M. An ambulance was summoned. O'Boyle was transported by ambulance back to the Mercy Hospital emergency room, where he had been examined a few hours earlier. He was admitted at 1:40 A.M. in a comatose state with multiple head trauma and other injuries. A neurosurgical evaluation performed during the early morning hours of September 15, 1995 revealed "massive and severe intracranial hemorrhages throughout all ventricles and a large intracerebral hematoma in the left frontal ara, as well as a subarachnoid hemorrhage." (O'Boyle amended complaint, ¶ 42). O'Boyle's condition was pronounced terminal, and he died later that day without ever regaining consciousness.[7]

Regina O'Boyle filed an action on her own behalf and as administratrix of her son's estate against the police and city personnel for the alleged civil rights violations. Her five-count amended complaint alleged the following: 1) a section 1983 claim asserted on behalf of the estate against the police officers for alleged use of excessive force, unlawful detention, failure to protect and the denial of medical treatment; (Count I); 2) a section 1983 claim asserted by Regina O'Boyle on her own behalf for the alleged deprivation of her federal constitutional right of access to the courts, and her constitutional right of companionship (Count II); 3) a *Monell* claim[8] asserted on behalf of the estate against the city, the mayor and the Chief of Police (Count III) alleging a policy and practice of disregarding Pennsylvania Rule of Criminal Procedure 71 and the Standard Operating Procedures of the Wilkes–Barre Police Department relating to the arrest, detention, and preliminary arraignment of intoxicated individuals during evening hours (Count III); 4) pendent state law claims asserted on behalf of the estate alleging negligence and violations of the Pennsylvania Constitution (Count V);[9] and 5) pendent state law claims asserted by Regina O'Boyle on her own behalf alleging intentional infliction of emotional distress and violations of the Pennsylvania Constitution (Count VI).[10]

**Primary insurance provisions**

Western World contends that the coverage afforded under its policy is excess, not primary, and that Reliance is the primary carrier for the claims asserted in *O'Boyle.* It bases that contention on a clause in the Western World policy under the heading "Other Insurance" which provides that: "The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise." (Record document no. 10, ¶ 11).

Western World cites excerpts from the policy issued by Reliance in further support of its position:

a. Coverage provided under this Coverage part is primary except as stated in (b) and (c) below . . .

. . . .

d. If you have both this policy and another policy that is primary, *we* will limit the amount *we* pay, based upon the following rules:

(1) *Contribution by Equal Shares*

If the policies permit payment by equal shares, we will pay *our* share as follows:

Each insurer contributes equally, until the full amount of the loss is paid or

---

7. The facts related here are taken from O'Boyle's underlying amended complaint, a copy of which is attached as exhibit "C" to the complaint initiating this action (record document no. 2).

8. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

9. The *O'Boyle* amended complaint skips Count IV.

10. A copy of the amended complaint filed in *O'Boyle* is attached as exhibit "D" to the complaint (record document no. 2) initiating this action.

until the lowest limit of liability on any policy is reached. If anything more remains to be paid, the rest of the insurers contribute equally, until the full amount of the loss is paid or until each insurer has paid up to its limit.

(2) *Contribution by Limits*

If any of the policies do permit payment by equal shares, *we* will pay *our* share of the loss based upon the percentage *our* limit of liability bears to the total limits of liability of all insurance available for the loss.

(Record document no. 10, emphasis added by Western World, quoting Reliance policy, form CG QP 00 01 02 7, at page 1 of 14). Western World argues that under these provisions, Reliance is liable for the entire settlement of $750,000.00 and all defense costs incurred by both carriers, since these amounts are below its policy limits of $1,000,-000.00 per occurrence.

### Law enforcement exclusion

Reliance denies any obligation to defend *O'Boyle* or fund the settlement. It contends that any such obligation is negated by the following exclusionary clauses:

### EXCLUSION—LAW ENFORCEMENT ACTIVITIES

This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part.

This insurance does not apply to 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising out of any act or omission of your police department or any other law enforcement agency of yours including their agents or employees.

This exclusion does not apply to 'bodily injury,' 'property damage', 'personal injury' or 'advertising injury' arising out of the ownership, maintenance or use of your premises which are not ordinarily incidental to law enforcement activities.

(Reliance policy, endorsement form CG 22 51 11 85).

### ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part.

This insurance does not apply to 'bodily injury', 'property damage', 'advertising injury', or 'personal injury' arising out of:

(a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b) the negligent

(i) employment;

(ii) investigation;

(iii) supervision;

(iv) reporting to the proper authorities, or failure to so report; or

(v) retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

(Reliance policy, endorsement form CG 21 46 01 87).

Reliance argues that all claims asserted by O'Boyle arise out of law enforcement activities and that under the terms of its policy, it has no obligation to provide coverage for such claims since they are specifically excluded from coverage.

The language of the Reliance policy is unambiguous. Coverage is plainly excluded for all claims "arising out of any act or omission of your police department or any other law enforcement agency of yours including their agents or employees" or acts incident thereto.

Western World relies on a Middle District of Pennsylvania case, *Imperial Casualty & Indemnity Company v. Home Insurance Co. of Manchester,* 727 F.Supp. 917 (M.D.Pa. 1990), *aff'd per curiam,* 909 F.2d 1476 (3d Cir.1990), in which Judge Caldwell interpreted an exclusionary clause similar to the one found in the Reliance policy. The exclusionary clause at issue in *Imperial* was contained in a comprehensive general liability policy issued to the County of York by defendant Home Insurance Co. (Home Insurance). A coverage dispute arose after the death of

York County prison inmate Elvin R. Parker. Parker suffered a fatal heart attack on May 31, 1985 while incarcerated in the county prison. In the suit filed subsequent to his death, *Parker v. County of York,* Civ. No. 87–0466 (M.D.Pa.), it was alleged that Parker was taken to the prison infirmary at about 10:00 p.m. suffering from symptoms of a heart attack. Medical staff on duty allegedly failed to provide appropriate medical treatment. It was also alleged that during the days just prior to his heart attack, he was denied prescribed heart medication and proper medical care.

The coverage dispute centered on two policies, a comprehensive general liability policy issued to the county by Home Insurance and a policy insuring against "wrongful acts arising out of Law Enforcement activities" issued to the York County Sheriff's Department by Imperial Casualty & Indemnity Co. (Imperial). *Id.* at 918.

Home Insurance denied any obligation to provide coverage on the basis of two exclusionary provisions in its policy, excluding coverage for: 1) "malpractice and professional services"—defined to include " 'bodily injury or property damage due to the rendering or of failure to render any professional service' "; and 2) "law enforcement" activities— defined to include "any loss or claim arising out of the law enforcement activities or operations" of the county. *Id.*

In the absence of a more detailed policy definition of what are deemed to comprise "law enforcement activities," the district court looked to *Black's Law Dictionary,* 796 (5th ed. 1979) and *Ballentine's Law Dictionary,* 712 (3d ed. 1969) for guidance. *Black's* defined a "law enforcement officer" as one " 'whose duty it is to preserve the peace.' " *Imperial,* 727 F.Supp. at 918. *Ballentine's* defined a police officer as one " 'whose duty it is to be vigilant in discovering violations of the criminal laws and ordinances and to arrest offenders.' " *Imperial,* 727 F.Supp. at 918. Reasoning that since Parker died while in York County Prison, his death was not caused by law enforcement activities or the

acts of law enforcement personnel, the district court ruled that the exclusionary clause did not apply and that Home Insurance was obliged to provide coverage. *Id.*

Although *Imperial* involved an interpretation of a similar policy exclusion for law enforcement activities, the facts of this case compel us to reach the opposite conclusion. Here, O'Boyle remained at all times in the custody and control of the Wilkes–Barre Police. He was arrested for public drunkenness, a summary offense under 18 Pa.Cons. Stat.Ann. § 5505,[11] and transported by the Wilkes–Barre police from the Mercy Hospital Emergency Room to the police station, where he was placed in a holding cell. Several hours later, he was discovered unconscious. An ambulance was summoned and he was taken back to the emergency room where he died hours later.

Plaintiff's cause of action arises out of O'Boyle's treatment by Wilkes–Barre Police officers while in their custody. No other city or county employees were directly involved with him or his treatment. Police officers are plainly within the generally-accepted definition of law enforcement personnel. Unlike incarceration following an adjudication or plea of guilt, temporary detention of an arrestee pending arraignment or release from custody is a law enforcement activity when performed by a police officer.

In contrast, in *Imperial,* Parker was incarcerated in the York County Prison. He was not in police custody when he suffered a fatal heart attack or was allegedly deprived of adequate medical care. Additionally, the exclusionary language in the Home Insurance policy was not as broad as that in the Reliance policy. The policy which Home Insurance issued to York County excluded "law enforcement activities" defined to include "any loss of claim arising out of the law enforcement activities or operations" of the county. *Id.* Reliance, however, excluded from its coverage any " 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising out of any act or omission of ... [the Wilkes–Barre] ... police depart-

---

11. A warrantless arrest for public intoxication is proper. *Commonwealth v. Shillingford,* 231 Pa.Super. 407, 332 A.2d 824 (1975).

ment or any other law enforcement agency of ... [the city] ... including their agents or employees." Reliance's exclusionary language is much closer to that interpreted in *Town of Wallingford v. Hartford Accident and Indemnity Company*, 231 Conn. 301, 649 A.2d 530 (1994) as precluding coverage.

Our interpretation of what acts come within the ambit of law enforcement activities is consistent with the holdings of other courts. In *Home Indemnity Co. v. Johnson County Fiscal Court*, 682 F.Supp. 326 (E.D.Ky.1987), Home Indemnity Company (Home) filed a declaratory judgment action seeking an adjudication that it had no obligation to provide coverage under a general liability policy issued to Johnson County, Kentucky which excluded liability "arising out of the ownership or operation of any penal institutions" or for injuries "arising out of the performance of ... law enforcement ... activities ... and all operations necessary and incidental thereto." *Home Indemnity*, 682 F.Supp. at 327. Home argued that these exclusions relieved it of any obligation to defend or fund the recovery in a civil rights action filed by the survivors of two individuals murdered by an escapee from the Johnson County Jail. The district court found both exceptions applicable, stating, with respect to the second, that "[t]here can be no valid argument that the operation of a jail, for the purpose of incarceration of convicted criminals or detention of accused, pending disposition of charges against them, is a component of and incidental to law enforcement." *Id.* at 329.

In *Town of Wallingford*, the Town of Wallingford filed a declaratory judgment action seeking a ruling that coverage existed under its comprehensive general liability (CGL) insurance policy for a wrongful death action filed to recover for the suicide of a pre-trial detainee arrested for shoplifting and held in the town jail. The complaint filed in the underlying action alleged liability on the part of the arresting officer and on the part of the Town of Wallingford on the basis of an alleged failure of the chief of police to train officers under his supervision and to provide equipment which would have allowed the officers on duty to administer appropriate medical attention to the detainee. The town's CGL policy excluded coverage for "Law Enforcement Activities," stating: "It is agreed that the insurance does not apply to bodily injury or property damage arising out of the activities of police personnel, police departments or other law enforcement agencies or the individual or joint action of a member or members of the police department or other law enforcement agencies in the line of duty or on behalf of or on the orders of the named insured." *Id.* 649 A.2d at 532. The Connecticut Supreme Court held that the exclusion plainly barred coverage for "all activities by police personnel ... as well as all activities of police departments and all activities of non-police law enforcement agencies in the town." *Id.* at 533. The court distinguished *Imperial Casualty & Indemnity Co. v. Home Ins. Co.*, stating, that "unlike here, the applicable exclusion [in that case] was limited on its face to 'any loss or claim arising out of the law enforcement activities or operations' of the police." *Id.* quoting *Imperial*, 727 F.Supp. at 918. The exclusionary language in Wallingford's policy "has much broader effect and precludes coverage for claims arising out of any activities of the police, whether or not related to law enforcement," the court held. "[T]he mere fact that the allegations of the Rosado complaint revolved around events occurring within a jail, rather than during an arrest or apprehension, is of no significance. Police activities in both settings are excluded from coverage under the plain language of the contract." For those reasons, the court held that the exclusionary clause applied to bar coverage.

*Pfeifer v. Sentry Insurance*, 745 F.Supp. 1434 (E.D.Wis.1990) originated as a civil rights action filed by Deborah Pfeifer against the City of Brookfield, Wisconsin, a former Brookfield police officer and their insurers. Brookfield had a liability policy covering law enforcement activities issued by Western World Insurance Company. Sentry Insurance, a Mutual Company (Sentry) had issued a general liability insurance policy to the city. The underlying claims were settled, leaving only the question of coverage before the court. Western World defended the action under a reservation of rights and contributed toward the settlement. It then asserted a

crossclaim against Sentry for contribution or indemnification. *Id.* at 1438.

Sentry denied any obligation to defend the suit filed by Pfeifer or fund the settlement on the basis of two exclusionary clauses in its policy which provided as follows:

Police professional liability exclusion

It is agreed that as respects police professional liability, this policy shall not apply to any liability for personal injury or property damage arising out of:

1) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution; or,

2) libel, slander, defamation of character, humiliation, or invasion of the rights of privacy;

As respects the operation, including the rendering or failure to render professional services of any law enforcement officer within the municipality.

Law enforcement liability exclusion

It is agreed this insurance does not apply to bodily injury, personal injury or property damage due to the rendering of or failure to render police or law enforcement services.

This exclusion does not apply to bodily injury, personal injury, or property damage arising out of the ownership, maintenance, or use of your premises which are ordinarily nonincidental to law enforcement activities.

Municipalities errors and omissions exclusion

It is agreed that this policy shall not apply to any liability for any actual or alleged error, misstatement, or misleading statement, act or omission, or neglect or breach of duty by the insured, or by any other person whose acts the insured is legally responsible for arising out of the discharge of duties as a (municipality) and/or (municipal council) or as a duly elected or appointed members or officials thereof.

*Id.* at 1439.

The court interpreted these provisions as barring any obligation on Sentry's part to defend the City of Brookfield in the underlying action. Although Western World argued that Pfeifer's allegation that she suffered harm "[a]s a result of the actions and inactions on the part of defendant City of Brookfield" took her claims outside the scope of Sentry's exclusion for law enforcement activities, the court rejected that argument, stating: "No facts in the Amended Complaint support an inference that any city function other than law enforcement was involved and Western World has not presented evidence of facts not found in the pleadings of which Sentry would have been aware which could have been a basis for liability." *Id.* at 1440. See also: *Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989) (clause excluding coverage for injuries "arising out of … the activities and operations of" the police "covered not only police operations per se, but also anything incident to or having connection with such operations") and *Siat v. Fauria*, 494 So.2d 1224, 1226 (La.App.), *cert. denied*, 497 So.2d 1012 (La.1986), (exclusion for claims "arising from activities of … policemen" unambiguously excludes "any activity of a policeman"). Compare: *Sanabria v. American Home Assurance Company*, 68 N.Y.2d 866, 508 N.Y.S.2d 416, 501 N.E.2d 24 (1986).

**Payment due Reliance**

The parties agreed in settling the underlying action that:

In the event it is subsequently determined that he subject Reliance policy did not cover the claims asserted in the *O'Boyle* action, Western World shall: a) pay to Reliance the amount of $125,000, said amount representing the balance of the coverage limits available under the City of Wilkes–Barre's insurance policy with Western World; and, b) Western World will also refund to Reliance all monies paid by Reliance pursuant to paragraph 4 of this Agreement.

(Record document no. 5, exhibit at ¶ 7).

Paragraph 4 of the agreement provides:

Reliance shall also pay fifty percent (50%) of the defense costs incurred by Western World in the defense of the *O'Boyle* action. Reliance shall, however, receive a credit of fifty percent (50%) of the defense costs (Attorneys Freund and

Weind) it has incurred to date in the *O'Boyle* action....

(Record document no. 5, exhibit at ¶ 4).

With its answer (record document no. 3), Reliance asserted counterclaims for a declaratory judgment that it had no obligation to defend the *O'Boyle* action or fund the settlement and for reimbursement and/or indemnification in the amount of $125,000.00 as well as reimbursement of all monies paid to Western World for defense costs incurred in connection with *O'Boyle*.

### Summary

The exclusion in the Reliance policy barring coverage for law enforcement activities or activities incidental thereto plainly bars coverage of all claims asserted in *O'Boyle*, including the *Monell* claims asserted against the city, the mayor, and the chief of police, *Murdock*, 892 F.2d at 8. All claims asserted arise out of law enforcement activities and are, therefore, excluded from coverage by the plain language of the policy issued by Reliance. The clear absence of coverage makes it unnecessary for us to consider plaintiff's other arguments.

Judgment will, therefore, be entered in favor of Reliance on all claims asserted by Western World, and in favor of Reliance on its counterclaims.