CLARENDON NATIONAL INSURANCE COMPANY, Plaintiff,

v.

CITY OF YORK, PENNSYLVANIA, Defendant.

Civ.A. No. 1:CV–02–1500.

United States District Court, M.D. Pennsylvania.

Nov. 6, 2003.

Richard J. Cohen, Goldberg Segalla LLP, Buffalo, NY, Jay B. Harris, Fineman, Krekstein & Harris, P.C., Philadelphia, PA, for Plaintiff.

Donald B. Hoyt, Assistant City Solicitor, York, PA, for Defendant.

## MEMORANDUM AND ORDER

KANE, District Judge.

Before the Court is Plaintiff Clarendon National Insurance Company's motion for summary judgment (Doc. No. 20). The motion has been fully briefed and argument was heard on October 20, 2003. For the reasons discussed below, the motion will be granted.

### I. *Background*

This is a declaratory judgment action filed by Plaintiff Clarendon National Insurance Company against the City of York, Pennsylvania to disclaim coverage for the civil action against the City and several York police officers filed in this Court and docketed as civil action number 03–169 (the "underlying action" or the "Allen case").

Charles Robertson, then mayor of York, signed an application for insurance on May 26, 2000. (Doc. No. 23, Ex. I, attach. B). A supplemental application was signed on July 17, 2000. Based on these applications, Plaintiff issued the City public officials and employment practices liability insurance (Policy No. APR 15–00123), effective August 19, 2000 through August 19, 2001, in return for a policy premium of $23,243.

The underlying action is a civil rights suit concerning the events surrounding the death of Lillie Belle Allen in York, Pennsylvania on July 21, 1969. Although Ms. Allen was murdered over thirty years ago, the case was not solved, and in the early part of 2000, the City began actively investigating the case. Mr. Robertson was questioned as part of the investigation on May 9, 2000, and shortly thereafter held a press conference. Plaintiff alleges that police personnel and Mayor Robertson were implicated in the murder as early as June of 2000. A petition for a grand jury was filed on June 23, 2000, and Charlie Robertson, along with several other former York police officers, ultimately became targets of the grand jury and were indicted for the crime. Robertson was acquitted; however, a jury found Robert Messersmith and Gregory Neff guilty of second-degree murder in the case. Seven other men charged in the crime plead guilty to lesser charges.

On June 27, 2001, Plaintiff was given notice by the plaintiffs in the Allen action that they had a claim for damages against the City and city officials. (Doc. No. 24, Compl. at ¶ 24). Plaintiff reserved its right to deny coverage by letter to Defendant dated September 7, 2001. *Id.* at ¶ 26.

The Allen case was filed in this Court on January 20, 2003. In a letter dated January 31, 2003, counsel for Defendant asked for Plaintiff to advise the City regarding whether they would provide a defense in the underlying complaint. (Doc. No. 23, Ex. D, attach. A). Plaintiff sent a seven page letter in response to Defendant's request on February 18, 2003, denying a defense in the Allen case and disclaiming coverage on the same bases on which it brings the present declaratory judgment action. *Id.* at attach. B.

Plaintiff has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that there are no genuine issues of material fact regarding whether the policy was issued on the basis of material misrepresentations or whether five policy exclusions apply to the Allen case, and that it is entitled to recision or disclaimer of coverage as a matter of law.

## II. *Standard of Review*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505. The nonmoving party receives the benefit of all reasonable inferences. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.* at 322, 106 S.Ct. 2548.

## III. *Discussion*

Plaintiff contends that the insurance application and supplemental application contained material misrepresentations regarding the ongoing Grand Jury investigation as well as acts or omissions surrounding the Lillie Belle Allen murder that were known to city officials that might give rise to claims against them. As a result, Plaintiff argues that it is entitled to rescind the policy it issued to the City *ab initio.* Plaintiff alternatively asks for a declaration that it has no duty to defend the underlying action on the basis of one or more policy exclusions. Defendant contends that due to the secrecy of the Grand Jury investigation, the statements in the insurance policy application were true when signed and at the very least, who knew what and when is a genuine issue of material fact. Defendant also argues that each of the exclusions in the policy are insufficient to deny coverage at this stage of the litigation.

 This action is governed by Pennsylvania insurance law. *See Western World Ins. Co. v. Reliance Ins. Co.*, 892 F.Supp. 659, 662 & n. 6 (M.D.Pa.1995)

(analyzing choice of law issues in a coverage dispute). Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 321–22 (1963)). "The obligation to defend is determined solely by the allegations of the complaint in the action." *Pacific Indem. Co.*, 766 F.2d at 760 (citing *Wilson v. Md. Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954)). The duty cannot be disclaimed "until the insurer can confine the claim to a recovery that is not within the scope of the policy." *Id.* (citing *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484 (1959)).

██ To determine whether an insurer has a duty to defend an insured, a court must determine the scope of coverage in the insurance policy itself and then ascertain whether the complaint against the insured states a claim that is potentially covered under the policy. *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649, 651 (1994). If there is no possibility that any of the underlying claims could be covered by the policy, then judgment in the insurer's favor is appropriate. *See, e.g., Britamco Underwriters, Inc. v. Stokes*, 881 F.Supp. 196, 198 (E.D.Pa.1995); *Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (1991).

██ Under Pennsylvania law, when a court interprets an insurance policy, (1) the terms of the insurance policy must be given their ordinary meaning; (2) a term is ambiguous only if reasonably intelligent people considering the term in the context of the entire policy would honestly differ as to its meaning; and (3) the parties' intent must be determined not only from the language but from all of the circumstances. *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103–04 (3d Cir.1999). Any ambiguities are to be resolved in favor of the insured, however, a "court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982). If unambiguous, the clear terms of the insurance policy as written should be construed according to their plain and ordinary meaning and given full effect. *Id.; Hartford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 578 A.2d 492, 495 (1990).

██ Exclusions from coverage of an insurance policy will be effective against an insured if they are "clearly worded" and "conspicuously displayed" without regard to whether the insured read the limitations or understood their significance. *Pacific Indem. Co.*, 766 F.2d at 761 (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 567 (1983)). Any doubts regarding the insurer's duty to defend must be resolved in favor of the insured. *Am. Contract Bridge League v. Nationwide Mut. Fire Ins.*, 752 F.2d 71, 76 (3d Cir.1985).

Therefore, the issue before this Court is whether the allegations in the Allen complaint could potentially fall within the coverage of the insurance policy. *See Air Prods. and Chems., Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 180 (3d Cir.1994).

### A. Allegations of the Allen complaint

The plaintiffs in the underlying action are Michael Allen and Debra Taylor, the children of Lillie Belle Allen, individually and as co-administrators of Ms. Allen's estate; Hattie Dickson, sister of Lille Bellie Allen, individually and as administrator

of the estate of her late husband Murray Dickson; and Jennie Settles, the sister of Lillie Belle Allen, as administrator of the estate of her deceased parents, Reverend James and Beatrice Moseley (collectively, "the Allen plaintiffs"). Mr. and Mrs. Dickson and the Reverend and Mrs. Moseley were all present when Ms. Allen was murdered. On January 20, 2003, these plaintiffs filed a civil complaint against the City of York and former York police officers Ray Markel, Dennis McMaster, Charles Robertson, James Vangreen, and Ronald Zeager.

In their complaint, the Allen plaintiffs allege that the City and police officers incited violence against African–Americans, conspired to deprive the plaintiffs of their constitutional rights, and participated in and concealed the murder of Lillie Belle Allen in furtherance of a policy, practice, and custom of the City to discriminate against African–Americans. Counts I–IV of their complaint are brought pursuant to the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986. The Allen plaintiffs also brought a claim pursuant to the Survival Act and tort claims for wrongful conduct or breach of duty, wrongful death, and intentional or negligent infliction of emotional distress (Counts V–VIII).

The complaint includes the following relevant factual allegations. Before the date of Ms. Allen's death, July 21, 1969, York police knew that white gangs were planning on committing violent acts against African–Americans in "retaliation" for the death of white police officer Henry Schaad. (*See* Doc. No. 23, Ex. C, Allen compl. at ¶ 24). The police did not prevent these impending acts, but instead facilitated and incited violent and lethal acts, thus placing Ms. Allen and her family in an inherently dangerous situation. *Id.* Specifically, uniformed police officers, including the defendants named in the underlying complaint, organized and attended a white power rally, at which they incited and encouraged white gang members to commit violent and lethal acts against African–Americans. *Id.* at ¶¶ 25–33. They led white power chants, allowed people to touch Officer Schaad's blood in his police vehicle, and distributed weapons and ammunition to members of the public. *Id.* The York police department was aware of and condoned these acts of its officers and did nothing to prevent or discourage them or the subsequent acts of violence, but rather facilitated them and allowed them to continue. *Id.* at ¶¶ 34–35.

On July 21, 1969, York police officers set up barricades at the corner of Philadelphia and Newberry streets in York. *Id.* at ¶ 42. Although city officials had been warned by citizens, the city ignored the reports and took no action to prevent the violence that led to Ms. Allen's death. *Id.* at ¶¶ 43–45. Officer Zeager, a defendant in the action, in his capacity as a police officer, removed the barricades to Newberry Street and let the car with Ms. Allen and her family through to the street where white gang members were waiting. *Id.* at ¶¶ 46–47. Zeager and other police officers knew that the gang members would commit violence against those in the Allen family car, but allowed them through in furtherance of a scheme of racial violence. *Id.* A rain of gun fire shot through the car, disabling it and terrifying everyone inside. Ms. Allen was subsequently fatally shot. *Id.* at ¶¶ 52–57.

Four police officers appeared at the scene after Allen was shot, driving Officer Schaad's blood stained vehicle. *Id.* at ¶ 59. The officer took no action to secure the crime scene, arrest anyone, or do anything to aid the family. They did not help the individuals, but instead directed them to drive away. *Id.* at ¶¶ 60–61. Ms. Allen's murder was not investigated properly. *Id.*

at ¶ 61. The police intentionally concealed their involvement in the murder and withheld critical evidence. *Id.* at ¶ 66.

## B. Insurance Coverage

The public officials and employment practices liability insurance issued to Defendant by Plaintiff (Policy No. APR 15–00123) was effective from August 19, 2000 to August 19, 2001. (Doc. No. 23, Ex. I, attach. A ("policy"), declarations page). The declarations page of the policy contains the following notice:

*IMPORTANT:* PUBLIC OFFICIALS LIABILITY COVERAGE AND EMPLOYMENT PRACTICES LIABILITY COVERAGE ARE CLAIMS–MADE COVERAGES. PLEASE READ YOUR POLICY CAREFULLY.

*Id.* The supplemental declaration page lists the types of coverage offered by Plaintiff in their municipal and public risk package policy and the limits on Plaintiff's liability for the coverage. The only items which contain limits are the public officials liability coverage form and the employment practices liability coverage form. (*Id.* at suppl. declarations). The declaration form specifically states that general liability coverage and law enforcement liability coverage are not covered under the policy. (*Id.* at items 6–10).

 In the letter seeking coverage for the Allen case, Defendant did not specify under which section it seeks coverage, however, Plaintiff presumed that the employment liability practices coverage was not applicable because none of the defendants in the underlying action were ever employees of the City and the claims do not relate to any employment relationship. (Doc. No. 23, Ex. D, attach. B at 3). This Court agrees. Thus, the only remaining basis for coverage is the public official liabilities coverage form claims-made coverage. (*See* policy at 14–19). The policy provides in relevant part:

We will pay on behalf of the insured all "loss" resulting from "public officials wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period" or Extended Reporting Period. The "public officials wrongful acts" must occur within the "coverage territory."

*Id.* at 14, section 1 ¶ 1. This policy defines an "insured" under this provision as:

1. You [the City];

2. All persons who were, now are, or will be your lawfully elected, appointed or employed officials;

3. Members of commissions, boards or other units operated by you and under your jurisdiction . . .;

4. All your employees and all persons who perform service on a volunteer basis for you and under your direction and control;

5. Any persons providing services to you under any mutual aid or similar agreement; and

6. The estates, heirs, legal representative or assigns of deceased persons who were insureds at the time of a "public officials wrongful act(s)" . . . .

*Id.* at 15–16, section 3. Finally, the policy contains sixteen exclusions, five of which Plaintiff advances as separate grounds to disclaim coverage for the underlying action. (*See* policy at 14–15, section 2).

### 1. Deliberate Act Exclusion

The policy provides that Plaintiff will not pay for or defend claims against the insured: "Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured[.]" (policy at 14). The Allen plaintiffs have alleged knowing and intentional

deprivation of their civil rights in counts I–IV of the underlying complaint. (*See* Doc. No. 23, Ex. C, Allen compl. at ¶¶ 69; 70; 73; 77; 81). Defendant does not appear to dispute this; rather, it argues that Counts V and VIII of the underlying complaint assert actions sounding in negligence, which therefore precludes the application of the policy exclusion at this stage of litigation. (*See* Doc. No. 29, Br. in opp. at 4). However, it is clear that all of the Allen plaintiffs' allegations in counts I–IV allege intentional violations of the law, and therefore fall squarely within the deliberate violation exclusion. The exclusion is clearly worded and conspicuously displayed. *See Pacific Indem. Co.*, 766 F.2d at 761. Therefore, the Court will give full effect to the exclusion and accordingly finds that Plaintiff is not required to provide a defense to the City on counts I–IV of the underlying claims.

### 2. Law Enforcement Exclusion

On the declarations page of the insurance contract between the parties, item 8 specifies that law enforcement liability "occurrence coverage" is not covered and item 10 specifies that "law enforcement department or agency" is not covered. (Policy at suppl. declaration page). Furthermore, the public officials liability policy issued to Defendant includes an exclusion for claims "[a]rising out of operational law enforcement functions and activities including the operation of adult and juvenile detention facilities[.]" (Policy at 15).

Plaintiff asserts that this exclusion is sufficient to disclaim coverage on the remaining claims. Defendant argues that because paragraph 61 of the Allen complaint alleges that the actions of the defendants were contrary to police policy, the claims should not be excluded. Defendant further notes that the allegations of the Allen complaint are directed at the City

and not the police department and do not specifically mention "law enforcement function and activities." (*See* Doc. No. 29 at 5). These arguments are unpersuasive.

Many other courts have considered variations of the phrase "arising out of law enforcement functions and activities," and have nearly unanimously construed it broadly to include a variety of claims. *See, e.g., Western World Ins. Co. v. Reliance Ins. Co.*, 892 F.Supp. 659 (M.D.Pa.1995) (McClure, J.) (finding exclusion applicable to civil rights claims against Wilkes–Barre police officers arising out of the plaintiff's death while he was in police custody); *Borough of Kennett Square v. First Mercury Syndicate, Inc.*, No. 98–0168, 1998 WL 401603 (E.D.Pa. July 9, 1998) (applying exclusion broadly to include acts of retaliation and harassment by the chief of police); *Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989) (construing "arising out of" broadly as "originating from, growing out of, flowing from, incident to or having connection with") (citations and internal quotation marks omitted); *Pfeifer v. Sentry Ins.*, 745 F.Supp. 1434, 1440 (E.D.Wis. 1990) (applying exclusion to sexual assault of plaintiff by police officer); *Town of Wallingford v. Hartford Accident & Indem. Co.*, 231 Conn. 301, 649 A.2d 530, 533 (1994) (applying exclusion to claim for failure to prevent suicide in county prison); *Home Indem. Co. v. Johnson County Fiscal Court*, 682 F.Supp. 326, 328–29 (E.D.Ky.1987) (including operation of prison in law enforcement such that claims arising out of murder by prison escapee was excluded under the policy). *But see Imperial Cas. & Indem. Co. v. Home Ins. Co. of Manchester, N.H.*, 727 F.Supp. 917, 918 (M.D.Pa.1990) (Caldwell, J.) (declining to apply law enforcement exclusion to claim for negligent medical care while claimant was incarcerated).

Here, the operative facts of the underlying complaint all pertain directly to or "arise out of" the acts or omissions of the York police force in inciting and facilitating violence against African–Americans, failing to protect Ms. Allen and her family, and conspiring to commit violent acts on them and other African–Americans in the City. For instance, the Allen plaintiffs allege that the defendant police officers appeared at scene after Ms. Allen was shot in Officer Schaad's vehicle, took no action to secure crime scene, did not arrest anyone, did not help the individuals, but instead directed them to drive away. (Allen Compl. at ¶¶ 59–61). Furthermore, it is alleged that the police did nothing to investigate the murder and actively concealed their role. *Id.* All of these actions or inactions at the center of the Allen case relate to the police officers' duties as police officers. Their apparent abrogation of their law enforcement duties and use of their positions as police officers to effect these crimes does not bring the acts outside of law enforcement or insulate the city from the exclusion.

The Court finds that the law enforcement exclusion was clearly worded and conspicuously displayed and, although not required, that Defendant knew that law enforcement coverage would not be provided by Plaintiff as it had not purchased that type of coverage. *See Pacific Indem. Co.*, 766 F.2d at 761. As such, the underlying complaint against Defendant does not fall within the scope of coverage under the policy issued by Plaintiff. *See id.* at 760. Accordingly, Plaintiff may properly disclaim coverage under this exclusion.

### C. Conclusion

All the allegations in the Allen complaint arise out of either deliberate violations of the law or law enforcement activities and accordingly are excluded from coverage under the clear terms of the insurance contract. As there is no coverage for the underlying claims, Clarendon has no obligation to defend the City. Because this Court holds that Plaintiff is not required to provide a defense for Defendant in the Allen case based on these two exclusions, it need not reach the merits of Plaintiff's other arguments.

### IV. *ORDER*

For the reasons discussed above, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for summary judgment (Doc. No. 20) is **GRANTED. IT IS HEREBY DECLARED THAT** Plaintiff has no obligation to defend the City of York in connection with the civil suit of *Allen v. City of York,* M.D. Pa. Civil Action No. 03–169, as the events giving rise to the complaint are **EXCLUDED** from coverage under the insurance contract between the parties pursuant to the deliberate act and law enforcement exclusion provisions in the contract. Accordingly, judgment shall be entered in favor of Plaintiff and against Defendant. The Clerk of Court shall close the case.